## Hoover & Gamble v. Christian Doetsch.

1. SALES—*Warranty—Compliance with the Conditions.*—D. bought a harvesting machine upon a warranty that it was well built, of good mamerial, and would do good work where any such machine could be successfully operated. It was provided that should the machine fail to work properly when started, due notice must be given to the agents, and time allowed to send a person to put it in order. If it was not then made to work well, it might be returned, and any payment that had been made before the trial should be refunded, or a perfect machine given in its place. *It was held* that an offer to return the machine was not sufficient even though the agent said he would not receive it. If the machine had been taken to the agent's place of business, and the agent had refused to receive it, then the purchaser would have been relieved from responsibility, and the vendor compelled to refund the payments received or furnish a perfect machine.

**Memorandum.**—Assumpsit on promissory notes. Appeal from the County Court of Jackson County; the Hon. W. W. BARR, Judge, presiding. Heard in this court at the February term, 1894. Reversed and remanded. Opinion filed June 23, 1894.

The opinion states the case.

THOMAS H. PHILLIPS, attorney for appellants; A. B. GARRETT, of counsel.

HILL & MARTIN, attorneys for appellee.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

This action was brought by appellants before a justice of the peace to recover from appellee the amount due on two promissory notes for $75 and $65 respectively, the said notes had been given for an Excelsior harvester, sold to appellee by appellants in June, 1887, through their agent, Chris. Hack. On the trial of the case in the County Court on appeal, judgment was rendered in favor of appellee. This judgment was afterward reversed by this court. The second trial in the County Court resulted in another judgment for appellee, and the case is before us for the second time on appeal.

The contract of warranty and the other evidence in this record relative to all transactions prior to and at the time of the execution and delivery of the notes are the same as the contract and facts contained in the opinion in this case on the first appeal, to which opinion, reported in 45 Ill. App. 631, reference is here made.

It is sufficient to state that prior to October 1, 1887, the harvester had been tested and found defective; that the agent of appellants had declined to take it back, but had said that he would make it work; that on October 1, 1887, a change in the indebtedness was made by the execution and delivery of the notes sued on for a less amount than the original price, and in settlement for the machine, as certain witnesses state; and that these facts would have precluded appellee from setting up a breach of warranty as a defense in this action, but for the further fact, sworn to by him, that at the time when the notes were made, it was agreed that the contract of warranty should be continued in force till the next year, at which time another trial of the harvester should be made. Giving appellee the benefit of this assertion, though it is denied by the agent of appellants, it follows that whatever occurred prior to October 1, 1887, is mere history, and has no further bearing on the case than to throw light on

the transactions of the following year. As a statement of our views upon this point, we quote the following extract from the former opinion in this case:

" With all the knowledge and information touching the defective condition of the machine which appellee had obtained, as he says, by the repeated tests made, and on October 1, 1887, he executed the notes sued on. The agent, to whom the notes were delivered, and another witness who was present when they were executed, testify they were given in settlement for the machine.

" Appellee contradicts these witnesses, and says the notes were given with the agreement the guaranty was to continue. If the version of appellee is accepted, he executed and delivered these notes with full knowledge of the defects in the machine, but upon condition that he should have the benefit of the provision of the printed warranty in accordance with the terms thereof, whereby he undertook, if the machine failed to work properly when started, to give appellants, or their agents, due notice, and allow them sufficient time to send a person to put it in order, and render them necessary and friendly assistance, furnish teams, etc., and if it was not then made to work well he could return the machine, and any payment he had made before the trial of it would be refunded, or a perfect machine given him in its place. It was further provided, continued possession of the machine will be evidence of satisfaction. As we construe the printed warranty, its plain meaning and intent is, that even in case the machine proved worthless as a harvester, appellants were not to lose it or be obliged to go after it, and were not liable to refund the purchase money if appellee kept the machine and failed to make the test and give the notice, and then if it was not made to work well, failed to return it within a reasonable time; and we perceive no good reason as at present advised why the parties could not lawfully make this stipulation one of the terms of the warranty, nor why it was not operative and binding as a condition precedent.

" It was reasonable and fair to both parties. Appellee

could secure the repayment of the purchase money by per-
forming the slight duty of returning the machine if it could
not be made to work well, and thereby appellants would have
received the benefit of its intrinsic value, even if it would
not work well as a harvester; and we controvert no rule
announced in the cases cited by the construction and effect
we thus give to the written warranty. Was the condition
complied with and performed by the appellee? At the
time the notes were given the harvest of 1887 was over;
hence, the terms and conditions of the printed warranty did
not apply to the past, but to the future acts of the parties,
and the offer made in June, 1887, to return the machine, is
of no importance."

The evidence in this record shows that from the harvest
of 1887 to the harvest of 1888 the machine was left uncov-
ered and unprotected in the field where it had last been
used. Appellee himself swears that from June till the next
year, "no care was taken of it." After the machine had
been tested for a few days during the harvest of 1888, ap-
pellee caused it to be taken to Ben Ripley's woods, where it
remained, exposed to the weather, and in appellee's posses-
sion, as far as that question pertains to this suit, till Novem-
ber, 1893, the time of the second trial.

At the test, during the harvest of 1888, the machine failed
to work properly. This was not due to the general worth-
lessness of the machine, but to a specific defect, spoken of
as the locking of the binder. One witness says he "thought
the trouble" was with the bull-wheel. But the machine,
even though imperfect, was worth something, and con-
tinued exposure to the weather was not calculated to
enhance its value.

Appellee testifies that after the machine had been tried
the second year, he notified Hack, the agent, that it would
not work, and offered to return it, but that Hack said he
would have nothing more to do with it. Hack swears that
appellee did not offer to return the machine the second
year, or at any time after he signed the notes. Let us con-
sider the case on the assumption that appellee's testimony
is the truth.

Under the contract of warranty, if the machine failed to work properly, it was the duty of appellee to notify appellants or their agent of the fact. Let it be granted that this notice was given after the trial in 1888. It was then the duty of appellants to put the machine in order. Let it be granted that appellants did not even attempt to do this. What then? It was then the duty of appellee to return the machine, whereupon appellants had the option of refunding any payments made before the trial of the machine, or of furnishing a perfect machine. Was this requirement complied with by hauling the machine into Ben Ripley's woods, and leaving it there to rust and rot? Nay, verily. But it is said that the offer to return is sufficient where the agent says he will not receive the article. We think not in a case like the one under consideration. If the machine had been taken to the agent's place of business, and the agent had refused to receive it, then, and not till then, would appellee have been relieved from responsibility; then, and not till then, could appellants have been compelled to refund any payments received or furnish a perfect machine. We can not hold that appellee performed his part of the contract by leaving the machine exposed to the injurious action of the elements in Ripley's woods.

We deem it unnecessary to pass upon the instructions, further than to say that they are erroneous as far as they fail to harmonize with the views herein expressed.

The evidence is insufficient to support the verdict, and the judgment is reversed and the cause is remanded.